UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>SLRA INC., et al.,<br><br>    Defendants. | Case No. 19-cv-06131-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 35, 37 |

Twin City Fire Insurance Company brings this insurance coverage action against its insureds, SLRA Inc. and its owner Scott M. Landress (collectively "SLRA"), seeking a declaratory judgment that it is entitled to reimbursement of approximately $2.5 million in defense costs that it previously paid under an excess coverage policy. Twin City insists that a settlement agreement SLRA reached with the Securities and Exchange Commission ("SEC") which was memorialized in a cease-and-desist order triggered two exclusions under the coverage policy. SLRA has counterclaimed for breach of contract, bad faith, and declaratory relief. The parties' early cross-motions for partial summary judgment on the question of whether the SEC's order triggered the exclusions, and if not, whether this action can trigger the exclusions, are now pending before the Court.[1] Having considered the parties' briefs and having had the benefit of oral argument on May 7, 2020, the motions are GRANTED IN PART and DENIED IN PART for the reasons set forth below.

//

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 16 & 21.)

**BACKGROUND**

The parties filed the underlying early cross-motions for partial summary judgment to resolve two discrete legal questions. There are two relevant insurance policies: (1) the primary Management Liability Insurance policy SLRA had with CNA with a limit of liability of $10 million, and (2) the excess follow-form liability policy issued by The Hartford/Twin City Fire Insurance Company, also with a $10 million liability limit. (Dkt. Nos. 35-2, 35-3.[2]) Relevant portions of these policies are incorporated into the Court's discussion below.

Twin City also requests that the Court take judicial notice of the February 7, 2017 SEC order regarding its investigation into SLRA as successor entity to Liquid Realty Advisors III, LLC, and Mr. Landress (the "SEC order"). (Dkt. No. 36.) SLRA objects to Twin City's request for judicial notice. (Dkt. No. 42 at 15.) Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." However, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017). Here, the SEC's findings are disputed; indeed, the SEC order itself states that SLRA and Mr. Landress entered into the agreement:

> "Solely for the purpose of these proceedings and any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondents consent to the entry of this Order…"

(Dkt. No. 36-1 at § II.) Thus, while the Court can take judicial notice of the fact of the SEC order, the Court cannot take judicial notice of the facts set forth in the order as true given that the parties dispute those facts. The Court therefore takes judicial notice of the fact of the SEC Order, but not for the truth of the matters stated therein.

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.)

1    Twin City also requests judicial notice of the complaint filed in *LRGP III, LLC and SLRA
2    Inc. v. CPP Investment Board Real Estate Holdings, Inc*., No. 14 cv 6937-RJS (S.D.N.Y.), and an
3    SEC press release regarding its investigation into SLRA.  While both documents are judicially
4    noticeable as to the fact of their existence, they are not judicially noticeable as to the validity of
5    their content.  *See Wallis v. Centennial Ins. Co*., 927 F. Supp. 2d 909, 913-14 (E.D. Cal. 2013)
6    ("while the authenticity and existence of a particular order, motion, pleading or judicial
7    proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its
8    contents (the underlying arguments made by the parties, disputed facts, and conclusions of
9    applicable facts or law) are not."); *Sgarlata v. PayPal, Inc*., 2018 WL 6592771, at *6 (N.D. Cal.
10   Dec. 13, 2018) (taking judicial notice of press releases not for the truth of the matters asserted, but
11   to show what was reported publicly). Because Twin City only seeks judicial notice of these
12   documents to establish disputed facts, the Court declines to take judicial notice of these two
13   documents.

**DISCUSSION**

15   The parties have filed cross-motions for summary judgment on two threshold questions
16   regarding Twin City's two alternative claims for relief: (1) whether the SEC order constitutes a
17   final adjudication which triggered two exclusions under the policy; and (2), if not, whether this
18   action can constitute a separate action or proceeding giving rise to a final adjudication which
19   would trigger the exclusions.

20   **A. The SEC Order is not a Final Adjudication**

21   The parties agree that California law governs this dispute.  Under California law, while
22   insurance contracts have special features, "they are still contracts to which the ordinary rules of
23   contractual interpretation apply." *Bank of the West v. Sup. Ct*., 2 Cal.4th 1254, 1264 (1992).
24   Generally, "[u]nder statutory rules of contract interpretation, the mutual intention of the parties at
25   the time the contract is formed governs interpretation" and that intent is to be inferred wherever
26   possible solely from the written contract provisions. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1,
27   18 (1995), as modified on denial of reh'g (Oct. 26, 1995) (citing Cal. Civ. Code, §§ 1636, 1639).
28   "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular

3

1  sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by
2  usage', controls judicial interpretation." *Id*. (quoting Cal. Civ. Code §§ 1644, 1638). In
3  interpreting the language of an insurance policy, a court should give the words used their plain and
4  ordinary meaning. *See Giddings v. Indus. Indem. Co.*, 112 Cal.App.3d 213, 218 (1980).
5  Exclusionary clauses in insurance contracts are interpreted narrowly against the insurer and in
6  favor of the insured. *See Arenson v. Nat'l Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 83 (1995).
7       Twin City contends that the SEC's February 7, 2017 order constitutes a final adjudication
8  under the illegal profit/deliberate act exclusions in its excess policy:

**Amend Illegal Profit/Deliberate Acts Exclusion**

In consideration of the premium paid, it is agreed that Section **III. EXCLUSIONS**, is amended by deleting paragraph G. **Illegal Profits/Deliberate Acts** and replacing it with the following:

G.  **Illegal Profits/Deliberate Acts**

based upon or arising out of:

a.  the gaining of any profit, remuneration or advantage to which the **Insured** was not legally entitled as determined by a final adjudication in the underlying action or in a separate action or proceeding; or
b.  the committing of any deliberate fraudulent or deliberate criminal act by the **Insured** as determined by a final adjudication in the underlying action or in a separate action or proceeding.

For the purpose of determining applicability of Exclusions G:

i.  the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and
ii. only facts pertaining to and knowledge possessed by any past, present or future, chief executive officer or chief financial officer or general counsel, of an **Insured Entity** shall be imputed to the **Insured Entity**;

17  (Dkt. No. 35-2 at 36, Endorsement 14.)  The excess policy does not define "final adjudication."
18       Twin City insists that the SEC order constitutes a "final adjudication" because the
19  dictionary definition of "adjudication" is a "legal process of resolving a dispute."  (Dkt. No. 35 at
20  17 (quoting Black's Law Dictionary (11th ed. 2019).)  Twin City also relies on the Merriam-
21  Webster definition of "adjudicate" as "to make an official decision about who is right in (a
22  dispute)."  (Dkt. No. 35 at 17.)  Twin City, however, selectively quotes from both definitions.  The
23  full definition of adjudication in Black's Law Dictionary is "[t]he legal process of resolving a
24  dispute; the process of judicially deciding a case."  Similarly, the full Merriam-Webster definition
25  of adjudicate is "to make an official decision about who is right in (a dispute): to settle judicially."
26  *See* Merriam-Webster online https://www.merriam-
27  webster.com/dictionary/adjudicate?utm_campaign=sd&utm_medium=serp&utm_source=jsonld
28  (last visited April 29, 2020).  Dictionary.com notably defines adjudication as "the act of a court in

4

making an order, judgment, or decree." *See* dictionary.com, https://www.dictionary.com/browse/adjudication# (last visited April 29, 2020). Twin City does not argue—nor could it—that the SEC order arose out of a judicial proceeding. It was an administrative proceeding related to an SEC investigation.

Next, Twin City identifies the regulatory scheme governing the SEC's investigation—the Administrative Procedures Act ("APA"). Twin City highlights the APA's definition of an "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency" and an "adjudication" which is defined as the "agency process for the formulation of an order." 5 U.S.C. § 551 (6), (7). Neither of these definitions suggest that the SEC order constitutes a judicial determination regarding the legality of the conduct outlined in the SEC's order.

The cases Twin City relies upon to suggest otherwise are inapposite. *Levy v. U.S. S.E.C.*, 462 F. Supp. 2d 64, 67 (D.D.C. 2006), was an APA action brought by shareholders alleging that the SEC adopted amendments to SEC rules in violation of its rulemaking authority. The court in *Levy* was considering whether the challenged SEC actions constituted rules or final orders. The decision had nothing to do with whether an SEC order constituted a "final adjudication." *See also Lane v. U.S. Dep't of Agric.*, 929 F. Supp. 1290, 1293 (D.N.D. 1996), aff'd in part, rev'd in part and remanded, 120 F.3d 106 (8th Cir. 1997) (considering whether hearings before the Department of Agriculture's National Appeals Division were adjudications under the APA such that plaintiffs were entitled to attorneys' fees under the Equal Access to Justice Act).[3]

---

[3] Twin City's reliance on 17 C.F.R. § 202.5(e) for the proposition that the consent order here is unlike a civil settlement is even less availing. Twin City identifies the part of the regulations which states that the SEC does not permit a defendant to consent to an order that imposes a sanction while denying the allegations in the order and argues that SLRA could not have denied the findings or the SEC would have continued to prosecute the matter. However, Twin City ignores that the last sentence of Section 202.5(e) allows a defendant to "state[] that he neither admits nor denies the allegations"—which is exactly what SLRA did here. *See* Dkt. No. 36-1 at § II ("Solely for the purpose of these proceedings and any other proceeding brought by or on behalf of the Commission, or to which the Commission is a party, without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondents consent to the entry of this Order…").

5

SLRA in contrast identifies a series of cases that conclude that an SEC cease-and-desist order such as the one here has no preclusive effect. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (granting a Rule 12(f) motion to strike references to an SEC consent judgment because "a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues."); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (granting motion to strike allegations based on a Commodities Futures Trading Commission Order entered following a settlement because the order "was the product of a settlement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceeding.").

In *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 126 A.D.3d 76, 83 (N.Y. App. Div. 2015), for example, the court held that an insurer could not invoke a dishonest acts exclusion based on a consent order the insured previously entered into with the SEC. The applicable policy included an exclusion which denied coverage if a "judgment or other final adjudication thereof adverse to such Insured(s) shall establish that such Insured(s) were guilty of any deliberate, dishonest, fraudulent or criminal act or omission." *Id*. at 78. Because the SEC order contained language similar to that here wherein the parties entered into the agreement "without admitting or denying the findings," the court held that it could not be used to establish guilt. *Id*. at 79.

Twin City insists that *Vigilant* is distinguishable because the exclusion there imposed an additional requirement—that the final adjudication establish guilt. The Court is not persuaded that the inclusion of the establish guilt language materially alters the analysis. SLRA cites several cases holding that a settlement agreement cannot constitute a "final adjudication" sufficient to trigger an insurance policy exclusion. *See, e.g.*, *Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-CV-05658-LHK, 2015 WL 12990244, at *2 (N.D. Cal. Nov. 19, 2015) ("For purposes of the insurance policy exclusions at issue, SST's decision to settle the Trade Secret Action cannot constitute a final adjudication."); *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 572 (5th Cir. 2010) ("[w]hen a D&O policy requires a 'final adjudication' to trigger an exclusion, courts have consistently held that the adjudication must occur in the underlying D&O proceeding, rather than in a parallel coverage action or other

lawsuit."); *Wojtunik v. Kealy*, No. CV-03-2161-PHX-PGR, 2011 WL 1211529, at *8 (D. Ariz. Mar. 31, 2011) ("the Court interprets the term 'final adjudication' in the exclusion as not applying to a settlement."). Twin City, in contrast, has failed to cite any cases which hold that a SEC consent order constitutes a "final adjudication" for purposes of an insurance coverage exclusion such as the one at issue here.

Based on the undisputed facts, and as a matter of law, the SEC order did not constitute a final adjudication sufficient to trigger the policy exclusion. Accordingly, the Court denies Twin City's motion for summary judgment and grants SLRA's motion for summary judgment on this issue.

### B. "Separate Action or Other Proceeding"

Twin City's alternative basis for declaratory relief is based on the "separate action or proceeding" clause in the exclusion; that is, that the conduct exclusions can be triggered by either a "final adjudication in the underlying action or in a separate action or proceedings" and that this action can constitute such a "separate proceeding." (Dkt. No. 35-2 at 36, Endorsement 14.) Twin City insists that this interpretation is supported by the plain language of the policy. SLRA contends the plain language supports the opposite conclusion.

"The rules governing [insurance] policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995). "The 'clear and explicit' meaning of the [policy] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation." *Id.* (quoting Cal. Civ. Code §§ 1644, 1638).

> Endorsement 14 provides that the insurer shall not pay a loss based upon or arising out of:
>
>> The gaining of any profit … to which the Insured was not legally entitled as determined by a final adjudication in the underlying action or in a separate action or proceeding; or
>>
>> The committing of any deliberate fraudulent … act by the Insured as determined by a final adjudication in the underlying action or in a separate

7

action or proceeding.

(Dkt. No. 35-2 at 36.) This declaratory judgment lawsuit is indisputably a separate action or proceeding. Thus, under the contract's plain language, the exclusion applies if there is a final adjudication in this lawsuit that determines the loss was from the gaining of any profit to which the Insured was not entitled or from any deliberate fraudulent act by the Insured. *See Gallup, Inc. v. Greenwich Ins. Co.*, No. CV N14C-02-136 FWW, 2017 WL 420160 *5-6 (Del. Super. Ct. Jan. 30, 2017) (interpreting an exclusion with similar "as determined by a final adjudication in the underlying action or in a separate action or proceeding" language as including a coverage action because "[a] coverage action is an 'action or proceeding" which "is 'separate' from 'the underlying action,' since a coverage action is independent of the underlying action"); *Fed. Ins. Co. v. Sammons Fin. Group, Inc.*, 595 F.Supp.2d 962, 974 n.11 (S.D. Iowa 2009) (interpreting policy language providing that "the EXCLUSION shall not apply ... unless it is established ... by a final adjudication in the underlying action or in a separate action or proceeding" as meaning that the "adjudicatory requirement will be satisfied by a separate action or proceeding, including a declaratory judgment").

SLRA insists that the exclusion's "as determined by" language plainly means that "a final adjudication must have already been decided before Twin City invoked the Exclusions, not during or afterwards." (Dkt. No. 42 at 26.). In other words, Twin City could only invoke the exclusion and be relieved of its duty to pay defense costs if it pursued a declaratory judgment action prior to resolution of the SEC action. Once the SEC action resolved, by settlement or otherwise, it was too late for there to be any "separate action or proceeding" that "determined" whether the exclusion applied. (*Id.* at 27.) The Court is unpersuaded. SLRA's interpretation is untethered to the exclusion's language; there is nothing in the exclusion that temporally restricts the final adjudication in a separate action or proceeding to an adjudication that occurs *before* the resolution of the underlying action. Indeed, under SLRA's interpretation, even a judgment in the underlying action itself that established facts triggering the exclusion would not be enough to invoke the exclusion because such final adjudication would not have occurred before the resolution of the underlying action. But such interpretation is nonsensical as the exclusion says it applies when the

8

relevant facts are determined by a final adjudication *in the underlying action;* thus, the final adjudication cannot be required to have occurred before resolution of the underlying action.

At oral argument SLRA refined its argument somewhat, and explained that the final adjudication would have had to have occurred in the underlying proceeding—the SEC action. Since that action was resolved without a final adjudication the exclusion cannot apply as a matter of law. This argument, too, is unpersuasive as it renders the "separate act or proceeding" language meaningless. *See Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 783 (2003) ("contract may not be interpreted in a manner which would render one of its terms meaningless"). SLRA's lament that it is unfair to require it to litigate in this coverage action the same issues that were resolved, by settlement, in the underlying action rings hollow as the record suggests that SLRA could have purchased a policy that allows the exclusion to be triggered only by a final adjudication in the underlying action (Dkt. No. 35 at 24), and there is nothing in the record that supports an inference that such a policy was not available. While SLRA may be correct that it does not make financial sense for the parties to litigate this coverage action to final adjudication, litigation costs are not a valid reason for the Court to ignore the plain and unambiguous language of the insurance policy.

## CONCLUSION

Based on the foregoing, Twin City's motion for summary judgment is DENIED and SLRA's cross-motion is GRANTED as to the issue of whether the SEC Order constitutes a final adjudication that can trigger the Conduct Exclusions. It does not. Twin City's motion partial summary judgment is GRANTED and SLRA's motion is DENIED as to whether Twin City can establish in this separate coverage action that the Conduct Exclusions apply. It can. The Court will hold a further case management conference on July 16, 2020 at 1:30 p.m. by video. A further case management conference statement which proposes a case schedule as well as an ADR process shall be filed one week in advance.

//

//

//

**IT IS SO ORDERED.**

Dated: June 5, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge